353 P.2d 358

ROYAL INDEMNITY COMPANY, Intervening Plaintiff-Appellee,

B. J. Service, Inc., a corporation, Third-Party Defendant-Appellee,

v.

SOUTHERN CALIFORNIA PETROLEUM CORPORATION, Defendant-Appellant.

No. 6562.

Supreme Court of New Mexico.

June 10, 1960.

Neal & Neal, Hobbs, E. J. Kolb, Dallas, Tex., for appellant.

Atwood & Malone, Charles F. Malone, Roswell, for appellees.

CARMODY, Justice.

Appeal from the dismissal of third-party complaints and from the entry of summary judgment on intervenor's claim for subrogation.

These proceedings are an outgrowth of the principal case arising out of an oil well fire in which two workers were killed and one seriously injured. Initially, three separate cases were filed, but they were subsequently consolidated for trial and later, by stipulation, consolidated for purposes of appeal.

The issues on appeal between the plaintiffs and the defendants, Southern Califor- nia Petroleum Corporation and Clower Drilling Company, a Corporation, are entirely foreign to the questions hereafter discussed, and the problems involved will be the subject of a separate opinion, in a cause entitled Tipton, et al. v. Clower, even though all phases of the case are in this court under one docket number. Inasmuch as there are, in effect, two separate cases, the facts of the main case will not be detailed except to generally clarify the issue with which we are here concerned. These facts will be merely outlined, and should not be considered as covering all of the necessary facts and circumstances of the main case.

Southern California Petroleum Corporation (hereafter referred to as "Southern California"), as the owner of a lease, employed Clower Drilling Company, a Corporation (hereafter called "Clower"), to drill an oil well to a certain depth. Upon reaching the "pay section," Clower's drilling equipment remained in place and Southern California orally employed B. J. Service Company, Inc., a Corporation (hereafter termed "B. J. Service") to cement the casing in the well. It was during the cementing process that a fire occurred, resulting in the death of two and injury to one of the employees of B. J. Service. Thereafter, three suits were filed, two by the administratrices of the two deceased workmen and one by the injured workman, grounded on negligence, against Southern California and

Clower. Royal Indemnity Company (hereafter referred to as "Royal") intervened as a party plaintiff seeking subrogation for the amounts it had paid for the deaths and the injury under the Workmen's Compensation Act as insurance carrier for B. J. Service. Southern California then filed its third-party complaint against B. J. Service, alleging that the accident was caused by B. J. Service's negligence and was therefore a breach of contract, warranting Southern California's recovery of any judgment obtained against it over and from B. J. Service. This complaint, by a second count, sought similar recovery on the theory of an implied agreement for indemnity in the event of negligence.

The trial court sustained B. J. Service's motion to dismiss the third-party complaint, and granted summary judgment in favor of Royal and against Southern California. The judgment, though ordered earlier, was actually entered after a jury trial of the issues between the various plaintiffs and Clower, inasmuch as Southern California did not participate in the trial because immediately before it had taken a joint tort-feasor's release from the three plaintiffs. Thus, in this particular phase of the case, we are concerned only with Southern California, as appellant, and B. J. Service and Royal, as appellees.

We will first dispose of the legal issue relating to the third-party complaint based on the facts as alleged. This has to do with the effect of the Workmen's Compensation Act on liabilities of an employer arising between the employer and parties with whom he contracts.

To be more specific, the question becomes: Is the exclusive remedy provision of the Workmen's Compensation Act so broad as to grant amnesty to an employer for all causes of action relating to employees' injuries, regardless of the question of independent breach of duty, where there is no express contract of indemnity? Sections 59–10–5 and 59–10–6, N.M.S.A., 1953 Comp., insofar as they relate to the question involved, are as follows:

"59–10–5. Defenses to action by employee. * * *

"Any employer who has elected to and has complied with the provisions of this act [59–10–1 to 59–10–31], including the provisions relating to insurance, shall not be subject to any other liability whatsoever for the death of or personal injury to any employee, except as in this act provided; and all causes of action, actions at law, suits in equity, and proceedings whatever, and all statutory and common-law rights and remedies for and on account of such death of, or personal injury to any such employee and accruing to any and all persons whomsoever, are hereby abolished except as in this act provided."

"59–10–6. Right to compensation is exclusive of other remedies—The right to the compensation provided for in this act [59–10–1 to 59–10–31], in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

"(a) Where, at the time of the accident, both employer and employee are subject to the provisions of this act; and where the employer has complied with the provisions thereof regarding insurance.

"(b) Where, at the time of the accident, the employee is performing service arising out of and in the course of his employment.

"(c) Where the injury or death is proximately caused by accident arising out of and in the course of his employment, and is not intentionally self-inflicted."

Southern California urges that B. J. Service, by its contract, impliedly agreed to do its work without negligence and is therefore liable or must indemnify for the damage proximately caused by its negligence. As to such basic contentions, we do not feel there need be any discussion. However, the next step in the argument is the determinative one. This is: That assuming liability for negligence, and, therefore, indemnity, under the contract, that injuries to employees of B. J. Service are a recoverable item of damage. This assertion has support in several jurisdictions, on the theory that when the employer breaches an independent duty toward the third party, he has an obligation to indemnify. American District Telegraph Co. v. Kittleson, 8 Cir., 1950, 179 F.2d 946; Rich v. United States, 2 Cir., 1949, 177 F.2d 688; Westchester Lighting Co. v. Westchester Co. S. E. Corp., 1938, 278 N.Y. 175, 15 N.E.2d 567; San Francisco Unified School Dist. v. California Bldg. Main. Co., 1958, 162 Cal. App.2d 434, 328 P.2d 785; Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. However, none of the statutes construed contained such explicit, definite language as does the New Mexico act, and this is true particularly as to the Ryan case, supra, in which the Supreme Court of the United States construed the provisions of the Longshoremen's Act.

It should also be mentioned that many of the cases distinguish between contribution by the employer, which is not recoverable (see 2 Larson's Workmen's Compensation Law 230, § 76.21) and indemnity, which was allowed in the above cases (see 2 Larson's Workmen's Compensation Law 233, § 76.-30).

We pause to observe, however, that such a distinction between contribution and in-

demnity is more one of words than of substance, in view of the plain, simple language of our Act. We might also mention that a distinction made by some courts as to active and passive negligence of the employer, in allowing recovery for active negligence but not passive, is inclined to confuse the true issue. Sometimes the terms primary and secondary negligence are used. We decline to become involved in matters of terminology which would merely tend to obscure the real issue in contest.

A series of annotations dealing generally with this subject may be found in American Law Reports. See, 53 A.L.R.2d 977 with cases cited therein and references to prior annotations at 978.

In Beal by Boatwright v. Southern Union Gas Company, 1956, 62 N.M. 38, 304 P.2d 566, 568, there was no contract between the parties, so the precise point here involved was not determined. However, our ruling today is merely a logical extension of that decision, wherein we said:

"The limitation of employer's liability for injuries sustained by an employee covered by the Workmen's Compensation Act covers all instances where that injury is sought to be made the basis for further and additional liability by the employee or others in his behalf, and indirect liability for such injury is also foreclosed both by the terms of the act and because the employer's liability for such injury is not in tort."

The decision in Beal followed a federal court ruling in Hill Lines, Inc. v. Pittsburg Plate Glass Co., 10 Cir., 1955, 222 F.2d 854, 857. On similar, though not identical, facts to those before us, the court affirmed the granting of a summary judgment in favor of Pittsburg the third-party defendant-employer which had paid compensation to the injured workman. The court said:

"The most that can be said of Hill Lines' theory is that by virtue of the contractual relationship between Hill Lines and Pittsburgh with respect to unloading the truck, Pittsburgh became solely liable to its employee for his injuries. The answer is that if Pittsburgh is either solely or jointly liable for those injuries, its liability is limited by the workmen's compensation act. The result is the same. In either event, the workmen's compensation law operates to insulate Pittsburgh from liability to Hill Lines.

"We have no doubt of the constitutional power of the legislature to insulate an employer subject to a workmen's compensation act from all other liability to an employee arising out of a covered injury, including the right of a third party joint tortfeasor to contribution even though it may cut across equitable considerations. Coates v.

Potomac Electric Power Co., D.C., 95 F.Supp. 779."

Also, compare, Ward v. Denver & R. G. W. R. Co., D.C.D.Colo.1954, 119 F.Supp. 112; Hunsucker v. High Point Bending & Chair Co., 1953, 237 N.C. 559, 75 S.E.2d 768; Baltimore Transit Co. v. State, 1944, 183 Md. 674, 39 A.2d 858, 156 A.L.R. 460; Wisconsin Power & Light Co. v. Dean, 1957, 275 Wis. 236, 81 N.W.2d 486.

■ The use of the words in the section of the statute, supra, "Any employer * * * shall not be subject to any other liability whatsoever * * * and all causes of action, actions at law, suits in equity, and proceedings whatever, and all statutory and common-law rights and remedies * * * are hereby abolished * * *" expressly limits the liability of the employer and destroys the common-law right of indemnity.

■ Whether or not a different rule might be applied in a case where an employer and a third party had specifically contracted for indemnity, we need not here decide. Suffice it to say that in this case, where reliance is placed upon an implied agreement, we do not feel that the position of Southern California can be sustained as against the strong language of § 59–10–5, supra. If such an agreement to indemnify were to be implied, the employer would be obligated to pay damages to an injured employee, through a third party, over and above the amount of compensation fixed by the Act, and thus impose the very liability against which the Act declared the employer should be insulated. This does not appear to be the legislative intention, and the court will not by decision alter the plain, clear language of the legislative enactment.

We therefore conclude that the trial court correctly dismissed the third-party complaints.

■ Southern California's objection to the granting of summary judgment in favor of Royal, the insurer of B. J. Service, is answered in part by our conclusion that there is no cause of action grounded on negligence against the employer. However, Southern California also contends that the negligence of the employer is imputable to its insurance carrier, Royal, and, therefore, bars the right of subrogation. Southern California argues that subrogation being an equitable principle, equity will not allow the negligent employer to recoup his loss from an innocent third party.

■ We are actually not dealing with the equitable doctrine of subrogation, but with the right to reimbursement under the Workmen's Compensation Act, which provides:

§ 59–10–25, N.M.S.A., 1953 Comp.:

"The right of any workman, or, in case of his death, of those entitled to

receive payment or damages for injuries occasioned to him by the negligence or wrong of any person other than the employer as herein defined shall not be affected by this act (§§ 57–901—57–931 [59–10–1 to 59–10–31]), but he or they, as the case may be, shall not be allowed to receive payment or recover damages therefor and also claim compensation from such employer hereunder, and in such case the receipt of compensation from such employer hereunder shall operate as an assignment to the employer, his or its insurer, guarantor or surety, as the case may be, or [of] any cause of action, to the extent of the liability of such employer to such workman occasioned by such injury which the workman or his legal representative or 'others may have against any other party for such injuries or death."

We have held this to be a reimbursement statute and that there is but a single cause of action in the employee, even though a part of the recovery is to be paid to the employer or his insurer. Kandelin v. Lee Moor Contracting Co., 1933, 37 N.M. 479, 24 P.2d 731.

As to the right of reimbursement by an employer who is negligent, or whose negligence concurs in causing the injury, the authorities are in hopeless conflict, although the substantial majority take the position that the employer's negligence does not bar him from recovery. Cyr v. F. S. Payne Co., D.C.D.Conn.1953, 112 F.Supp. 526; Nyquist v. Batcher, 1952, 235 Minn. 491, 51 N.W.2d 566; Fidelity & Casualty Co. v. Cedar Valley Elec. Co., 1919, 187 Iowa 1014, 174 N.W. 709; Otis Elevator Co. v. Miller & Paine, 8 Cir., 1917, 240 F. 376; Graham v. City of Lincoln, 1921, 106 Neb. 305, 183 N.W. 569; Utley v. Taylor & Gaskin, Inc., 1943, 305 Mich. 561, 9 N.W.2d 842; Clark v. Chicago, M. St. P. & P. R. Co., 1934, 214 Wis. 295, 252 N.W. 685; Milosevich v. Pacific Elec. Ry. Co., 1924, 68 Cal. App. 662, 230 P. 15; City of Shreveport v. Southwestern Gas & Elec. Co., 1919, 145 La. 680, 82 So. 785.

The above mentioned statute omits any mention of the situation where negligence of the employer is to be considered as affecting the employer's right of action against a third party. Whether this was an intentional omission or an oversight on the part of the legislature, we do not know, nor can we speculate. The fact remains that there is but one cause of action, and the employer, or his insurer, is specifically granted reimbursement in this single cause of action. Therefore, we align ourselves with the cases above cited and hold that the action of the trial court in granting the summary judgment in favor of Royal was correct. The cases to the contrary, including those cited by appellant, are not as persuasive to us, although we have given them our serious consideration.

Southern California's final contention that summary judgment was not proper until there was a judicial determination of the liability between claimants and Southern California has no merit, because the taking of the joint tort-feasor's release was an attempt to split the cause of action, which we have held not permissible. See, Sellman v. Haddock, 1957, 62 N.M. 391, 310 P.2d 1045.

Thus, the settlement of the claims with the plaintiffs must be considered as the establishment of liability and carried with it the assignment or reimbursement provided for by statute. To hold otherwise would foreclose the right of Royal, as insurance carrier, because the claimants, as indispensable parties, would no longer be before the court.

For those, including appellant here, who may feel that the rulings announced in this opinion may seem harsh or inequitable, we merely say that this is a matter for legislative consideration. 2 Larson's Workmen's Compensation Law 243, § 76.53, states:

"A situation like this ought to be dealt with legislatively. It is rather inconsiderate to force courts to speculate about legislative intention on the strength of statutory language in framing which the draftsmen had not the remotest trace of the present question in their minds. The legislature should face squarely the question whether the third party who happens to be so unfortunate as to get tangled up with a compensable injury should, so to speak, individually subsidize the compensation system by bearing alone a burden which normally he could shift to the employer."

It should also be mentioned that throughout this opinion the case has been considered solely on the basis of the pleadings alleging that the proximate cause of the accident was the negligence of B. J. Service, although, from a factual standpoint, the jury returned a verdict which, but for the joint tort-feasor's release, would have resulted in a judgment against Southern California in the three cases of one-half of $450,000. In addition, the jury, by its answers to interrogatories, found that B. J. Service was not negligent and that the concurring negligence of Southern California and Clower was the cause of the accident. These facts are mentioned only to clarify the case in the mind of any reader, and were not considered by us in arriving at our decision.

The judgment will be affirmed, and It Is So Ordered.

McGHEE, C. J., COMPTON and MOISE, JJ., and HARRIS, D. J., concur.